IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FOZYIA HURI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 3675 |
| | ) |
| CIRCUIT COURT OF COOK COUNTY, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Office of the Chief Judge of the Circuit Court of Cook County's (Office of Chief Judge) and Defendant Sylvia McCullum's (McCullum) motion to dismiss, and on Defendant James Lawless' (Lawless) and Defendant Marilyn Filishio's (Filishio) motion to dismiss. For the reasons stated below, the motions to dismiss are granted.

**BACKGROUND**

Plaintiff Fozyia Huri (Huri) contends that she is a Muslim of Saudi Arabian national origin. In June 2000, Huri allegedly began working for the Office of the

Chief Judge as a Child Care Attendant in the Children's Advocacy Rooms of the Circuit Court of Cook County. Huri's supervisor was allegedly McCullum, the Executive Director of the Children's Advocacy Rooms of the Circuit Court of Cook County. Huri contends that at all relevant times, she wore an Islamic head scarf covering her hair, but not covering her face. Huri asserts that McCullum was aware of the fact that Huri was Muslim. Huri contends that McCullum repeatedly told Huri that McCullum and other individuals were "good Christian[s]," and referred to one individual as a "good church-going Christian." (SA Compl. Par. 31-33). McCullum also allegedly told another Child Care Attendant that she should work with a "good Christian" and not with Huri, because Huri was "evil." (SA Compl. Par. 34).

Huri also claims that in December 2009, McCullum asked the Child Care Attendants to hold hands and once they were all holding hands, McCullum prayed out loud. Huri contends that she was thus "involuntarily drawn into a Christian prayer circle," which "created a hostile work environment." (SA Compl. Par. 37). Huri asserts that from 2002 to November 2010, McCullum subjected Huri to false criticisms, falsely accused Huri of misconduct, subjected Huri to different rules than other co-workers, screamed at Huri, and subjected Huri to greater scrutiny than her co-workers. Huri contends that from 2002 to November 2010, she repeatedly complained about the religious comments, the prayer circle, and other conditions of

her employment. Following Huri's complaints, McCullum allegedly informed Huri that the Office of the Chief Judge "was not interested in [Huri's] complaints and was tired of [Huri's] complaints." (SA Compl Par. 40).

Huri contends that following her complaints, McCullum retaliated against Huri by continuing the alleged harassment. In November 2010, Huri was allegedly transferred to the Court Reporters' Office. Defendant Marilyn Filishio (Filishio) was allegedly the Administrator of the Court Reporters' Office, and Defendant James Lawless (Lawless) was allegedly the Assistant Administrator of the Court Reporters' Office. Huri claims that from November 2010 to the present, Filishio and Lawless have subjected Huri to a hostile work environment and have retaliated against Huri for making complaints about her work conditions prior to and since her transfer. Huri contends that Filishio and Lawless subjected Huri to false criticisms, falsely accused Huri of misconduct, subjected Huri to different rules than other co-workers, screamed at Huri, and subjected Huri to greater scrutiny than her co-workers. Filishio and Lawless also allegedly prohibited Huri from entering the office prior to her start time, but have allowed other employees to have 24-hour access to the office. In addition, Filishio and Lawless allegedly prohibited Huri's daughter from waiting for Huri in the lobby, but allowed other employees' children to wait in the lobby. Filishio and Lawless also allegedly prohibited Huri from having non-work items in

3

the office, but have allowed other employees to have non-work items in the office. Filishio and Lawless also allegedly personally invited all employees except Huri to a social gathering in the office. Finally, Huri contends that Filishio denied Huri's request for time off for an Islamic religious observance.

Huri includes in her amended complaint claims alleging a hostile work environment and discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e *et seq.* (Count I), a Title VII retaliation claim (Count I), claims alleging a violation of her First Amendment rights brought pursuant to 42 U.S.C. § 1983 (Section 1983) (Count II), and Section 1983 equal protection retaliation claims (Count II). Defendants have now filed motions to dismiss.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to

4

relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

I. Title VII Hostile Work Environment Claim

Defendants contend that the Title VII hostile work environment claim should be dismissed because the claim is outside the scope of the charges filed with the Equal Employment Opportunity Commission (EEOC). In general, a plaintiff cannot pursue Title VII claims in federal court "that were not originally included in the charges made to the EEOC." *Moore v. Vital Products, Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011)(internal quotations omitted)(quoting *Sitar v. Ind. Dep't of Transp.*,

344 F.3d 720, 726 (7th Cir. 2003)). Even if certain claims are not specifically referenced in an EEOC charge, "a plaintiff can still bring them if they are like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations." *Id.* (internal quotations omitted)(quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 538 F.2d 164, 167 (7th Cir. 1976)). For a claim to be like or reasonably related, "the relevant claim and the EEOC charge 'must, at minimum, describe the same conduct and implicate the same individuals.'" *Id.* (internal quotations omitted)(quoting *Cheek v. W. & S. Life Ins. Co.,* 31 F.3d 497, 501 (7th Cir. 1994)).

In the instant action, Defendants contend that Huri merely alleged discrimination based upon her religion and national origin in the two EEOC charges Huri filed with the EEOC (EEOC Charges), and that she did not allege that she was subjected to a hostile work environment. The court can consider the content of the EEOC Charges without converting the motion to a motion for summary judgment since the EEOC Charges are attached to the second amended complaint and are part of the pleadings. Fed. R. Civ. P. 10(c); Fed. R.Civ. P. 12(d). Huri alleged in the EEOC Charges that she was discriminated against because of her religion and national origin. Although Huri made limited references in the EEOC Charges to alleged harassment, Huri presented no allegations that would suggest that her work

6

environment included harassment that was so severe or pervasive that it altered the conditions of her employment. *See, e.g., Thompson v. Memorial Hosp. of Carbondale*, 625 F.3d 394, 401 (7th Cir. 2010)(stating that "[t]o constitute a hostile work environment under Title VII, the alleged harassment must be both subjectively and objectively so severe or pervasive that it alters the conditions of the plaintiff's employment"). Huri did not include in the EEOC Charges allegations regarding her work performance or work environment. The alleged hostile work environment is not referenced in the EEOC Charges and is not like or reasonably related to the allegations in EEOC Charges. Thus, Huri failed to exhaust her administrative remedies in regard to the hostile work environment claim. Therefore, the motions to dismiss the hostile work environment claim are granted.

II. Title VII Discrimination Claims

Defendants argue that the Title VII religion and national origin discrimination claims should be dismissed since Huri has failed to allege that she suffered any adverse employment action. For a Title VII discrimination claim, a plaintiff must allege facts that plausibly suggest that the defendant employer "instituted an adverse employment action against [the plaintiff] on the basis of her" protected characteristic. *Joren v. Napolitano*, 633 F.3d 1144, 1146 (7th Cir. 2011); *see also Thompson*, 625

F.3d at 406 (explaining that the reason for the adverse employment action requirement "is simply that a statute which forbids employment discrimination is not intended to reach every bigoted act or gesture that a worker might encounter in the workplace")(internal quotations omitted)(quoting *Phelan v. Cook County,* 463 F.3d 773, 780 (7th Cir. 2006)). The Seventh Circuit has indicated that an adverse employment action constitutes "a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 838 (7th Cir. 2008)(quoting *Bell v. E.P.A.,* 232 F.3d 546, 555 (7th Cir. 2000)).

In the instant action, Huri fails to allege that she suffered any significant change in the conditions of her employment as a result of the alleged discrimination. Huri alleges that she was transferred to the Court Reporters' Office, but she does not allege that the transfer resulted in any diminishment of her responsibilities, benefits, or pay. Huri also alleges that she was given false criticisms and was subjected to stricter scrutiny than co-workers, but she does not indicate that such conduct resulted in disciplinary actions or resulted in a loss of pay or benefits.

Huri contends that the alleged harassment was an adverse employment action. However, Huri cannot avoid the requirements for a Title VII discrimination claim by

8

contending that she was harassed, for example, by allegedly being yelled at by supervisors. Allegations of harassment do not eliminate the requirement of an adverse employment action when bringing a Title VII discrimination claim, and Huri cites no precedent for such a proposition. Since Huri fails in the second amended complaint to plausibly suggest that she suffered an adverse employment action due to unlawful discrimination, the motions to dismiss the Title VII discrimination claims are granted.

III. Title VII Retaliation Claim

Defendants argue that the Title VII retaliation claim should be dismissed because Huri fails to allege that she was subjected to an adverse employment action as a result of her engaging in protected activities. The definition of an adverse employment action for the purposes of a Title VII retaliation claim is defined more broadly than for a discrimination claim. *Vance v. Ball State University*, 646 F.3d 461, 473 (7th Cir. 2011). For a Title VII retaliation claim, "[g]enerally, if the challenged action would discourage other employees from complaining about employer conduct that violates Title VII, it constitutes an adverse employment action." *Id.* In this case, Huri alleges that she was subjected to harassment because she complained about her alleged unlawful discrimination. Huri alleges, for

9

example, that after she made complaints about discrimination based on her religion, false allegations of misconduct were made against her, she was subjected to stricter scrutiny than co-workers, and she was yelled at by supervisors. The Seventh Circuit has recognized that continued retaliatory harassment can be sufficient to support a Title VII retaliation claim. *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 703 (7th Cir. 2001). The Seventh Circuit has indicated that "[r]etaliatory harassment by co-workers or a supervisor can rise to this level" when "it is severe enough to cause a significant change in the plaintiff's employment status." *Id.* In this case, although Huri has put forth allegations such as that she was yelled at by supervisors in retaliation for complaining about discrimination, Huri has not alleged facts that plausibly suggest that she was subjected to harassment severe enough to cause a significant change in her employment status. Nor has Huri alleged facts to show under the general standard for a Title VII retaliation claim that she suffered harassment that would discourage employees from complaining about employer conduct that violates Title VII. Therefore, the motions to dismiss the Title VII retaliation claim are granted.

IV. Section 1983 First Amendment Discrimination Claims

Defendants contend that the Section 1983 First Amendment discrimination

claims should be dismissed since Huri has not alleged facts suggesting any type of infringement upon her First Amendment freedom rights. Huri argues that she has stated First Amendment discrimination claims based on the Establishment Clause and the Free Exercise Clause. (Ans. O&M 7).

A. Establishment Clause

Huri contends that she can proceed under the Establishment Clause. For a claim brought under the Establishment Clause, a plaintiff must show that a government policy or practice violates the Establishment Clause. *See, e.g., Kaufman v. McCaughtry*, 419 F.3d 678, 683 (7th Cir. 2005)(stating that "[a] government policy or practice violates the Establishment Clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion"); *Nelson v. Miller*, 570 F.3d 868, 881 (7th Cir. 2009)(explaining how "a government policy or practice violates the Establishment Clause"); *see also Larson v. Valente*, 456 U.S. 228, 244 (1982)(stating that "[t]he clearest command of the Establishment Clause is that one religious denomination cannot be officially preferred over another"); *Milwaukee Deputy Sheriffs' Ass'n v. Clarke*, 588 F.3d 523, 527 (7th Cir. 2009)(stating that "[u]nder the *Lemon* test, government action violates the Establishment Clause if it has any of the following

11

characteristics: (1) a non-secular purpose; (2) the principal or primary effect of advancing or inhibiting religion; or (3) fostering an excessive government entanglement with religion"); *Venters v. City of Delphi*, 123 F.3d 956, 969-70 (7th Cir. 1997)(explaining that "[b]roadly speaking, the establishment clause prohibits both the national government and, through the operation of the Fourteenth Amendment, the states, from compelling an individual to participate in religion or its exercise, or otherwise from taking action that has the purpose or effect of promoting religion or a particular religious faith"). In the instant action, Huri has failed to allege facts that plausibly suggest there was any governmental policy or practice underlying the alleged misconduct at issue in this case or any entanglement by any governmental entity with religion or preference of any religion by a governmental entity. The allegations in the second amended complaint merely suggest a series of decisions that were solely concerned with Huri, and there is no indication that such decisions were in any way related to a larger policy or practice. Nor has Huri pled facts to plausibly suggest that any of the other elements of an Establishment Clause claim could be met. Thus, Huri has failed to state a claim under the Establishment Clause.

    B.  Free Exercise Clause

Huri also contends that she has stated a claim under the Free Exercise Clause. In order to state a claim under the Free Exercise Clause, a plaintiff must allege facts to plausibly suggest that her "right to practice [her chosen religion] was burdened in a significant way." *Kaufman*, 419 F.3d at 683; *see also Venters*, 123 F.3d at 970 (stating that "[t]he free exercise clause . . . guards the individual's practice of her own religion against restraint or invasion by the government"). Defendants contend that Huri does not allege that she wanted to practice some aspect of her religion, but was not permitted to do so by McCullum. (Mot. 9). Huri only alleges that on one occasion Filishio denied her time off work for an Islamic religious observance. (SA Compl. Par. 47). Huri does not even allege one such incident relating to the other Defendants. *See Backes v. Village of Peoria Heights, Ill.*, 662 F.3d 866, 869 (7th Cir. 2011)(stating that "a defendant must have been 'personally responsible' for the deprivation of the right at the root of a § 1983 claim for that claim to succeed")(quoting *Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir. 1995)). Although Huri alleges that she was harassed because of her religion, Huri does not allege sufficient facts that plausibly suggest that she was substantially inhibited by Defendants in practicing her religion or that she was burdened in a significant way in practicing her religion. In fact, the allegations suggest that she openly practiced her religion. Thus, Huri has not stated a valid claim under the Free Exercise Clause.

Based on the above, the motions to dismiss the Section 1983 First Amendment discrimination claims brought against Defendants are granted.

V. Section 1983 First Amendment Retaliation Claims

Defendants contend that the court should dismiss the Section 1983 First Amendment retaliation claims because Huri does not allege that she suffered any adverse employment action. The Seventh Circuit has made clear that a Section 1983 "retaliation claim does not require an adverse employment action within the same meaning as other anti-discrimination statutes." *Hutchins v. Clarke*, 661 F.3d 947, 955-56 (7th Cir. 2011). An adverse employment action in the context of a Section 1983 retaliation claim is an action "sufficiently adverse to deter the exercise of the individual's right to free speech." *Id.* For a First Amendment retaliation claim, a plaintiff must establish: (1) that the plaintiff "engaged in activity protected by the First Amendment," (2) that the plaintiff "suffered a deprivation that would likely deter First Amendment activity in the future," and (3) that "the First Amendment activity was a 'at least a motivating factor' in the [defendant's] decision to take the retaliatory action." *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)(quoting in part *Massey v. Johnson,* 457 F.3d 711, 716 (7th Cir. 2006)); *see also Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011)(stating that in regard to a

14

public employee's First Amendment right to free speech, "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline")(internal quotations omitted)(quoting *Garcetti v. Ceballos,* 547 U.S. 410, 421 (2006)). In response to the instant motion, Huri indicates that she "is not bringing a Free Speech retaliation claim. . . ." (Ans. O&M 8). Huri also contends that her Section 1983 First Amendment retaliation claims are premised on the need to prevent harassment by a supervisor from "disuad[ing] a reasonable worker from making or supporting a charge of discrimination." (Ans. O&M 8). Such an argument, however, supports a Tile VII retaliation claim, rather than a Section 1983 First Amendment retaliation claim. In fact, the only case cited by Huri in support of her Section 1983 First Amendment retaliation claim is *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), which is a case that dealt with a Title VII retaliation claim, rather than a Section 1983 First Amendment retaliation claim. *Id.* at 56. Huri does not allege that her practice of religion was inhibited by alleged misconduct, or that she was retaliated against to inhibit the practice of her religion. Huri does not allege facts that plausibly suggest unlawful retaliation in violation of the First Amendment. Therefore, the motions to dismiss the Section 1983 First Amendment retaliation

15

claims are granted.

## VI. Equal Protection Claims

Huri also contends, in opposition to the motion to dismiss, that she has stated equal protection claims against Defendants. However, Huri does not indicate in her second amended complaint that she is bringing such claims. Huri's only reference to the Equal Protection Clause is a reference in the second amended complaint to: "Retaliation 14th Amendment - Denial of Equal Protection." (SA Compl. 8). Huri cannot amend her second amended complaint in her response to the motion to dismiss and present additional allegations not included in her pleading. To the extent that Huri seeks to pursue an equal protection retaliation claim, the Seventh Circuit has held that "the right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection clause." *Boyd v. Illinois State Police*, 384 F.3d 888, 898 (7th Cir. 2004). Huri has also failed to allege facts to suggest intent to discriminate based upon a protected characteristic or that she suffered an adverse employment action. *See, e.g., McPhaul v. Board of Com'rs of Madison County*, 226 F.3d 558, 564 (7th Cir. 2000)(explaining *prima facie* elements for a Section 1983 equal protection claim). Thus, Huri has not pled facts that plausibly suggest an equal protection claim.

VII.  Qualified Immunity

Lawless and Filishio also argue that they are protected by qualified immunity. State actors are protected by qualified immunity and are immune to civil damages "'where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have been aware.'" *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011)(quoting *Siliven v. Ind. Dep't of Child Servs.,* 635 F.3d 921, 925 (7th Cir. 2011)).  In determining whether a claim is barred by qualified immunity, a court must consider: "(1) whether the plaintiff's allegations show that the defendant violated a constitutional right, and (2) whether that right was clearly established at the time of the defendant's conduct." *Id.* (stating that "[a] court has discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand").  In the instant action, there are not sufficient allegations to plausibly suggest that Lawless and Filishio violated any clearly established constitutional right of Huri.  Even if Huri could have successfully stated a claim against the other Defendants in this case, which she has failed to do, the claims brought against Lawless and Filishio would be dismissed based upon their qualified immunity.

17

## CONCLUSION

Based on the foregoing analysis, the motions to dismiss are granted in their entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 25, 2012